**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Manuel Cano, | No. CV-06-2120-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. |  |
| Cocopah Casino, |  |
| Defendant. |  |

Pending before the Court is Defendant's Motion to Dismiss for lack of subject matter jurisdiction and insufficient service of process (Doc. # 11), as well as Defendant's Motion for Summary Disposition on Defendant's Motion to Dismiss (Doc. # 13). The Court now rules on the Motions.[1]

**I. Background**

*Pro se* Plaintiff Manuel Cano ("Mr. Cano"), formerly employed as a maintenance worker at Defendant Cocopah Casino ("Casino"), or, more properly, the Cocopah Tribe ("Tribe"), filed the current suit for employment discrimination on September 6, 2006. In his

---

[1]Though oral argument was requested on the Motion to Dismiss, because the Plaintiff did not respond to the Motion and oral argument would not have aided the Court's decisional process, the Court will not set oral argument. *See e.g., Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Complaint (Doc. # 1), Mr. Cano states that he is 68 years old and disabled. He also states that Cocopah Casino, or the Tribe, terminated his employment because he allegedly stole two bottles of champagne from the Casino on New Year's Eve of 2005. Mr. Cano claims that the bottles were given to him, and that two other employees who also took champagne were not terminated. Subsequently, Mr. Cano filed a Motion for Leave to Proceed in forma pauperis (Doc. # 3), which the Court granted (Doc. # 4). Mr. Cano provided a service packet, including summons, notice and complaint, to the Court on October 30, 2006, which was then forwarded to the United States Marshall Service. For reasons unknown to the Court, service of process was not made on the Casino until Mr. Cano himself effectuated service on January 29, 2007, 25 days after the expiration of the allotted time for service.

**II. Discussion**

### A. Summary Disposition

The Tribe requested Summary Disposition on its Motion to Dismiss, reasoning that Mr. Cano consented to the Tribe's Motion to Dismiss when he did not respond within the appropriate time. The Court, however, will rule on the merits of a case in the event of a dispositive motion, even if the non-moving party does not respond. The Ninth Circuit has held that a non-moving party's failure to comply with a purely local rule, for example, the deadline to file an opposition, is not grounds itself for summary judgment. *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003). The *Martinez* court further held that a district court cannot grant summary judgment as a sanction for the violation of such a rule. *Id.* This Court does not make a practice of granting dispositive motions, summary judgment or otherwise, simply based upon a failure to respond, and without judging the merits of the motion.

### B. Sufficiency of Service - Rule 4

The Tribe alleges insufficient service, under Federal Rule of Civil Procedure 4, in two regards: (1) Mr. Cano failed to serve the Tribe in a timely manner, and (2) he failed to serve the appropriate agent of the Tribe. Typically, courts interpret the rules dealing with service of process liberally when it comes to *pro se* litigants. *See e.g.*, *Haines v. Kerner*, 404 U.S.

519 (1972). Although Mr. Cano technically served the Tribe more than 120 days after filing his Complaint, the Court errs on the side of caution and will allow the 25 day extension. Without further information,[2] the Court concludes that Mr. Cano's delivery of the service packet allowed him to rely upon service by the U.S. Marshall Service. *See Davis v. Dept. of Corrections*, 446 F.2d 644, 645 (9th Cir. 1971) (error for district court to dismiss for failure to effect service when plaintiff was proceeding in forma pauperis). For the same reason, since Mr. Cano relied upon service by the U.S. Marshall Service, the Court fails to find that his own subsequent service upon one of the Casino's floor managers constituted a fatal flaw in service of process. The Tribe has not alleged that service upon the floor manager, as opposed to an authorized agent, caused any confusion or unreasonable delay in the litigation.[3] *See Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) ("In making extension decisions . . . a district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.").

**C. Real Party in Interest - Rule 17**

The Tribe notes that Mr. Cano filed this action against "Cocopah Casino," which is neither a legal entity nor the real party in interest. The Cocopah Tribe wholly owns the Casino, and serves as the formal employer of all casino staff. Federal Rule of Civil Procedure 17(a) requires prosecution in the name of the real party in interest, but also stipulates that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest[.]"

Here, the Tribe does not allege that a reasonable time has been given to Mr. Cano to cure the defect in his Complaint, but claims only that "naming the real party in interest cannot

---

[2]Mr. Cano did not respond to the Tribe's pending Motion to Dismiss.

[3]If Mr. Cano's service upon the floor manager caused the Tribe's delayed Answer, due on February 20, 2007 but filed on February 26, 2007, the Court excuses the Tribe's delay.

cure the fact that the Tribe was not properly served and this Court lacks jurisdiction over the Tribe" (Doc. #11 at 4). Since the Court has determined that Mr. Cano's insufficient service does not constitute a fatal flaw, he should also be given an opportunity to substitute Cocopah Tribe, the real party in interest, for Cocopah Casino, the current named Defendant.

### D. Subject Matter Jurisdiction

#### 1. ADA

The Tribe alleges that neither the Americans with Disabilities Act ("ADA") nor the Age Discrimination in Employment Act of 1967 ("ADEA") applies to Indian Tribes. The language of the ADA leaves no doubt that Congress exempted the federal government and Indian tribes from Title I when it specified that "the term 'employer' does not include . . . the United States, a corporation wholly owned by the government of the United States , or an Indian tribe . . . " 42 U.S.C. § 12111(5)(b); *Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999). Therefore, the Court agrees with the Tribe that the ADA does not govern in this case.

#### 2. ADEA

Unlike the ADA, the ADEA remains silent about application of the statute to Indian tribes, providing only that "the term 'employer' does not include . . . the United States, or a corporation wholly owned by the government of the United States." 29 U.S.C. § 360(b)(2). A statute of general applicability, like the ADEA, typically applies to Indian tribes. *Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99 (1960). Courts have maintained an exemption, however, "where the law would interfere with tribal self-government." *Snyder v. Navajo Nation*, 382 F.3d 892, 895 (9th Cir. 2004). Indian tribes receive protection for "exclusive rights of self-governance in purely intramural matters." *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985); *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1078 (9th Cir. 2001); *See also EEOC v. Fond du Lac Heavy Equip. and Constr. Co.*, 986 F.2d 246, 249-51 (8th Cir. 1993) (holding that the ADEA did not apply when a purely intramural matter would affect the tribe's right of self-governance); *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989) (holding that race

discrimination statutes did not apply to a tribe's designation of tribal member criteria).

The Ninth Circuit has, however, identified situations where the self-governance exception would not apply and an Indian tribe would be subject to a federal employment law. In *Coeur d'Alene*, the court held that "[t]he operation of a farm that sells produce on the open market and in interstate commerce is not an aspect of tribal self-government. Because the Farm . . . is in virtually every respect a normal commercial farming enterprise, we believe that its operation free of federal health and safety regulations is 'neither profoundly intramural . . . nor essential to self-government.'" 751 F.2d at 1116. Additionally, the court has held that when an organization "employs a significant number of non-Native Americans and sells virtually all of its finished products to non-Native Americans through channels of interstate commerce . . . the [Occupational Safety and Health] Act does not touch on the Tribe's 'exclusive rights of self-governance in purely intramural matters.'" *U.S. Dept. of Labor v. Occupational Safety & Health Review Comm'n*, 935 F. 2d 182, 184 (9th Cir. 1991). More recently, the court determined that the National Labor Relations Act applied to a financially independent, nonprofit tribal organization, which provided services to the tribe and others, operating off of the reservation. *NLRB v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995, 1000 (9th Cir. 2003); *See also Florida Paraplegic Ass'n, Inc. v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 11296, 1129 (11th Cir. 1999) ("tribe-run business enterprises acting in interstate commerce do not fall under the 'self-governance' exception"); *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 181 (2d Cir. 1996) (finding that OSHA applied to a tribe-owned business due to the "nature of MSG's work, its employment of non-Indians, and the construction work on a hotel and casino that operates in interstate commerce-when viewed as a whole, result in a mosaic that is distinctly inconsistent with the portrait of an Indian tribe exercising exclusive rights of self-governance in purely intramural matters.").

Here, the limited evidence before the Court supports application of the ADEA to the Cocopah Tribe. The present set of facts is distinguishable from the Ninth Circuit's decision not to apply the ADEA in *Karuk*. In analyzing the applicability of the ADEA to the Karuk

1 Tribe Housing Authority, the Ninth Circuit observed that "[i]t is not simply a business entity
2 that happens to be run by a tribe or its members, but, rather, occupies a role quintessentially
3 related to self governance. . . . Further, the dispute here is entirely 'intramural,' between the
4 tribal government and a member of the Tribe." *Karuk*, 260 F.3d at 1080-81.

5 In this case, the Tribe owns and operates Cocopah Casino, a commercial venture that
6 provides services on the open market and employs both tribal members and non-Indians.
7 Although the profits resulting from casino operations are presumably important to the
8 Cocopah Tribe and provide funding for purely intramural matters, the actual operations and
9 employment of workers at the Casino do not appear to touch on any "exclusive rights of self-
10 governance in purely intramural matters." The Cocopah Casino appears to function "simply
11 [as] a business entity that happens to be run by a tribe or its members." *See id.* The ADEA,
12 therefore, might apply in this case.

### E. Leave to Amend

14 In order to appropriately name the real party in interest, the Cocopah Tribe, and to
15 clearly set forth a cause of action under the appropriate federal law, Mr. Cano may have <u>ONE</u>
16 opportunity, within 20 days of this Order, to file an amended complaint. The original
17 Complaint as filed by Mr. Cano is susceptible to dismissal for failure to state a claim upon
18 which relief can be granted, so the Court cautions him to read the standards below very
19 carefully. He may also maintain this Court's approval to proceed in forma pauperis (Doc. #
20 4), and must provide a service packet to the U.S. Marshall Service within 30 days of this
21 Order. To comply with this Order and produce a sufficient amended complaint, Mr. Cano
22 must:

> make clear his allegations in short, plain statements with each claim for relief identified in separate sections. In the amended complaint, Plaintiff must write out the rights he believes were violated, the name of the person who violated the right, exactly what that individual did or failed to do, how the action or inaction of that person is connected to the violation of Plaintiff's rights, and what specific injury Plaintiff suffered because of the other person's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). Each claim of an alleged violation must be set forth in a separate count. Any amended complaint filed by Plaintiff must conform to the requirements of Rules 8(a) and (e)(1) of the Federal Rules of Civil Procedure.

*Kennedy*, 2005 WL 3358205, *3 (D. Ariz. 2005).

The recent Supreme Court decision, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), supports the language in *Kennedy*.  In *Bell Atlantic*, the Court states that:

> [w]hile a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

127 S.Ct. 1955 at 1964-65 (internal citations omitted).

Further, like the plaintiff in *Kennedy*,

> **Plaintiff is warned that if he elects to lodge an amended complaint and if he fails to comply with the Court's instructions explained in this order, the action will be dismissed pursuant to section 28 U.S.C. § 1915(e) and/or Rule 41(b) of the Federal Rules of Civil Procedure.**  *See McHenry*, 84 F.3d at 1177 (affirming dismissal with prejudice of prolix, argumentative, and redundant amended complaint that did not comply with Rule 8(a)).

*Kennedy*, 2005 WL 3358205, *3 (D. Ariz. 2005) (emphasis added).

Based on the foregoing,

IT IS ORDERED denying Defendant's Motion to Dismiss for lack of subject matter jurisdiction and insufficient service of process (Doc. # 11).

IT IS ORDERED granting Plaintiff leave to file an amended complaint within 20 days of this Order.  Plaintiff must give a service packet with the amended complaint to the U.S. Marshall Service within 30 days of this Order.

IT IS FURTHER ORDERED that if Plaintiff elects not to file an amended complaint within that time, the Clerk of the Court shall enter judgment of dismissal, without prejudice.

DATED this 24th day of July, 2007.

James A. Teilborg
United States District Judge

- 7 -